UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| O. NATHAN RONEN,<br><br>      Plaintiff,<br><br>   v.<br><br>NEW YORK SOCIETY OF SECURITY ANALYSTS, INC. d/b/a CFA SOCIETY NEW YORK,<br><br>      Defendant. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff O. Nathan Ronen ("Ronen" or "Plaintiff") by and through his attorneys, by way of a Complaint against New York Society of Security Analysts, Inc. d/b/a CFA Society New York ("NYSSA" or "Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. (the "Act").

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is total diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to all other claims in that they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff is a resident and citizen of the State of New Jersey, Essex County.

5. Defendant is a nonprofit organization formed under the laws of the State of New York, with its principal place of business located in the State of New York, New York County.

## ALLEGATIONS

6. Defendant NYSSA is a financial services trade group and networking forum for Chartered Financial Analysts ("CFA").

7. Plaintiff is a CFA and long-time instructor providing CFA exam preparation.

8. On or about October 23, 2014, Plaintiff, entered into a letter of agreement with Defendant (the "Agreement") to provide CFA exam preparation, workshops and video instruction for CFA candidates.

9. The Agreement, which provided a three-year term of employment beginning on January 1, 2015, provided Plaintiff with, *inter alia*, an annual base salary and various commission-based pay.

10. This commission-based pay was a crucial component of Plaintiff's overall compensation, as he agreed to accept a much smaller annual base salary in return for the opportunity to earn substantial compensation via a commission structure.

11. Under this commission-based structure, the Letter Agreement provided Plaintiff with: (1) 10% of all course fees received by NYSSA for each student who attended any course taught by Plaintiff; (2) 50% of all course fees received by NYSSA in connection with any workshops taught by Plaintiff; and (3) an annual sliding scale percentage of all CFA test prep video course fees that NYSSA received for all video courses performed by Plaintiff.

12. In or about late 2016, Defendant entered into a marketing alliance with Kaplan Schweser ("Kaplan"), one of the leading CFA exam prep providers in the country.

13. As part of this alliance, Defendant essentially abandoned the CFA exam prep business and became the exclusive marketing agent for Kaplan's CFA exam prep courses.

14. Upon information and belief, in return for its services, Defendant received a percentage share of the revenue Kaplan generated from its CFA exam prep courses, which included a guaranteed bottom-line for a five-year term.

15. As a result, Defendant no longer offered its own CFA courses or provided test preparation material.

16. Moreover, Kaplan charged its own fees for courses and test preparation material, and all revenue was received and collected directly by Kaplan.

17. Succinctly put, in lieu of providing, offering and charging for CFA courses, workshops and videos, Defendant abandoned its original business model of CFA course preparation and became the exclusive marketing arm for Kaplan.

18. Plaintiff had neither any prior knowledge of nor input regarding this marketing allowance, including how it could (and did) adversely interfere with the terms of his Agreement.

19. For instance, as a result of the marketing alliance Defendant was compelled by Kaplan to cease marketing and selling video courses taught by Plaintiff in the New York metropolitan area.

20. As the New York metropolitan area was Defendant's primary source of revenue for video sales, Plaintiff's commissions for the sale of said videos dropped precipitously in 2017.

21. Defendant also ceased actively marketing Plaintiff's videos, took no efforts to provide advanced notice of the availability of the videos, overpriced them in comparison to other videos and did not bundle the purchase with written class material (as is standard).

22. In addition, Plaintiff eventually learned that Defendant had not been properly applying his sliding scale commission for video sales.

23. Defendant had been improperly paying Plaintiff his commissions for video sales by utilizing a three-year sliding scale based on the cumulative sale of videos over the life of the Agreement, as opposed to calculating commissions for video sales on an annual basis, thus artificially reducing Plaintiff's percentage commission.

24. Moreover, pursuant to the Agreement, Plaintiff was guaranteed the right of first refusal for all CFA test prep courses. However, in 2016 Plaintiff was no longer able to effectively utilize his right of first refusal, which denied him additional commissions on course fees.

25. Defendant also failed to pay Plaintiff his proper 10% of all course fees that he taught.

26. Under the marketing alliance, all course fees were received by Kaplan, and all accounting of same was conducted by Kaplan.

27. Consequently, although Defendant received substantial revenue in course fees from Kaplan in 2017 when compared to 2016, Plaintiff received less in commission-based compensation than he did in 2016.

28. In 2017, Defendant also refrained from engaging in any active or timely marketing of various workshops performed by Plaintiff, resulting in a substantial reduction of his commission-based compensation for same.

29. As a result of all of the foregoing, Plaintiff was denied compensation to which he was rightfully entitled and which he would have ordinarily received, in an amount exceeding $75,000.00.

## COUNT ONE

30. The preceding paragraphs are repeated herein as if set forth at length.

31. By virtue of the foregoing, and in denying Plaintiff his rightful compensation under the Agreement, Defendant is in breach of the Agreement.

32. Plaintiff has incurred substantial damages as a result of Defendant's breach.

WHEREFORE, Plaintiff demands the following relief against Defendant as follows:

    A. Compensatory damages;

    B. Incidental and consequential damages;

    C.    Pre- and post-judgment interest and costs; and

    D.    Such other and further relief as the Court deems just and fair.

## COUNT TWO

33. The preceding paragraphs are repeated herein as if set forth at length.

34. In every contract a party is required to engage in good faith and fair dealing in its performance and enforcement.

35. Defendant engaged in actions that frustrated Plaintiff's ability to earn and/or receive his commission-based compensation under the Agreement, including its entering into the marketing alliance with Kaplan and refusing to actively market or sell Plaintiff's video courses and workshops.

36. Defendant has violated the implied covenant of good faith and fair dealing in the Agreement.

WHEREFORE, Plaintiff demands the following relief against Defendant as follows:

    A.    Compensatory damages;

    B.    Incidental and consequential damages;

    C.    Pre- and post-judgment interest and costs; and

    D.    Such other and further relief as the Court deems just and fair.

## COUNT THREE

37. The preceding paragraphs are repeated herein as if set forth at length.

38. The Agreement contained an Article 2 regarding Plaintiff's post-employment disclosure of confidential information, the ownership of ideas and intellectual property, non-competition and non-solicitation.

39. In the last year of Plaintiff's employment under the Agreement, Defendant offered to renew his employment for almost half of his historic annual compensation and pursuant to much more onerous terms and conditions.

40. Plaintiff attempted to negotiate in good faith more favorable terms, but Defendant refused to make any concessions to its demands.

41. The primary reason for Defendant's hardline stance was that, under its marketing alliance with Kaplan, Defendant had essentially abandoned its business model, was no longer involved in offering or conducting CFA test preparation courses, and thus no longer needed Plaintiff's services.

42. As a result, the parties allowed the Agreement to expire on its own terms as of December 31, 2017.

43. In order to earn a livelihood, Plaintiff formed his own New Jersey-based company, Chalk & Board LLC, which only offers CFA instruction videos and workshops to prospective CFA candidates.

44. On or about January 17, 2018, Defendant, through legal counsel, sent a cease and desist letter to Plaintiff alleging that, *inter alia*, his operation of Chalk & Board violated Article 2 of the Agreement, and demanded that Chalk & Board immediately cease operations.

45. On or about January 18, 2018, Plaintiff, through legal counsel, sent Defendant a substantive response to its January 17 letter, setting forth the various legal and factual reasons why Plaintiff was not in violation of any provision within Article 2.

46. On or about February 13, 2018, Defendant forwarded a reply letter which rejected the legal and factual rationale provided by Plaintiff in his January 18 letter.

47. The parties engaged in additional communications and correspondence, each time disagreeing with the others contentions regarding Plaintiff's conduct as it applies to Article 2 of the Agreement.

48. Article 2 of the Agreement, most specifically the non-competition provision, is unenforceable for, *inter alia*, the following reasons: (1) it is unenforceable pursuant to the substantive law of the State of New York governing employment restrictive covenants; (2) Defendant has abandoned the CFA test prep business, and thus has no discernible or legitimate business interest in enforcing the non-compete; (3) Defendant is in material breach of the Agreement by its failure to properly remunerate Plaintiff in accordance with same; (4) the non-compete is only triggered upon the "termination" of Plaintiff's employment, not the natural expiration of the Agreement; and (5) the non-compete is expressly contingent on Defendant paying Plaintiff his base salary for the duration of same.

49. There exists a substantial and concrete controversy between the parties regarding the applicability and enforceability of Article II of the Agreement.

50. This controversy touches upon the legal relations and obligations of the parties vis a vis the other.

51. Accordingly, Plaintiff seeks declaratory relief under the Act with respect to Article 2 of the Agreement.

WHEREFORE, Plaintiff demands the following relief against Defendant as follows:

    A.    A declaration that Plaintiff is not in violation of any provision of Article 2 of the Agreement;

      B.    A declaration that the non-competition provision of the Agreement is unenforceable as a matter of law;

      C.    Reasonable attorneys' fees and costs; and

      D.    Such other and further relief as the Court deems just and fair.

                **Budd Larner, PC**
                Attorneys for Plaintiff

                By: /s/Joshua L. Weiner
                    Joshua L. Weiner, Esq. (JLW5875)
                    150 John F. Kennedy Pkwy
                    Short Hills, NJ 07070
                    jweiner@buddlarner.com
                    P: (973) 315-4499
                    F: (973) 455-0027

Dated: February 20, 2018